SIGAL CHATTAH
United States Attorney
Nevada Bar Number 8264
JESSICA OLIVA
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
Fax: (702) 388-6418
jessica.oliva@usdoj.gov

LORINDA LARYEA
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
MONICA COOPER
Trial Attorney
1000 Louisiana, Ste. 2300
Houston, TX 77002
Tel: (202) 262-1916
monica.cooper@usdoj.gov

Attorneys for the United States of America

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 25cr179 |
| Plaintiff, | CRIMINAL INFORMATION |
| vs. | VIOLATION: |
| PAULINO GONZALEZ, | 18 U.S.C. § 371 – Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks |
| Defendant. | FORFEITURE ALLEGATIONS |

THE UNITED STATES ATTORNEY FOR THE DISTRICT OF NEVADA CHARGES THAT:

**Background Allegations**

At all times relevant to the Information, unless otherwise stated:

1

**The Medicare Program**

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered, among other things, health services provided by skilled nursing facilities, hospices, and home health agencies. Medicare "Part B" covered, among other things, medical items and services provided by physicians, nurse practitioners, group practices, and other qualified health care providers, that were medically necessary and ordered by licensed medical doctors or qualified health care providers.

4. Physicians, nurse practitioners, group practices, and other health care providers (collectively, "providers") that provided services to beneficiaries were able to apply for and obtain a "provider number." A provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for items and services provided to beneficiaries.

5. A Medicare claim was required to contain certain important information, including: (a) the beneficiary's name; (b) a description of the health care benefit, item, or

service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring or rendering physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). The claim form could be submitted in hard copy or electronically via interstate wire.

6. When submitting claims to Medicare for reimbursement, providers were required to certify that: (1) the contents of the forms were true, correct, and complete; (2) the forms were prepared in compliance with the laws and regulations governing Medicare; and (3) the items and services were reasonable and medically necessary.

7. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations.

8. To enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute. Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

**The Defendant and Related Entities**

9. Defendant PAULINO GONZALEZ ("GONZALEZ") was a resident of Las Vegas, Nevada, in the District of Nevada. GONZALEZ was a registered nurse licensed by the State of Nevada. From in or around October 2021, through in or around August 2024, GONZALEZ, along with others, ordered and applied amniotic allografts distributed and

sold by Company 2 and Company 3 to Medicare beneficiaries as an independent contractor with Company 1.

10. Company 1 was a corporation formed under the laws of Nevada, with its principal place of business in Henderson, Nevada. Company 1 was a provider of products distributed and sold by Company 2 and Company 3. Company 1 was also an enrolled Medicare provider and submitted claims to Medicare for payment.

11. Company 2 consisted of two separate entities owned by the same individual, both of which were limited liability companies formed under the laws of Nevada, with their principal places of business in Las Vegas, Nevada, which conducted the same conduct throughout this conspiracy. Company 2 was a marketer and distributor of amniotic allografts, including allografts sold by Company 3.

12. Company 3 was a limited liability company formed under the laws of Texas, with its principal place of business in Fort Worth, Texas. Company 3 was a wholesale distributor of various amniotic allografts.

## COUNT ONE
*Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks*
**(18 U.S.C. § 371)**

13. The allegations in paragraphs 1 through 12 are re-alleged and incorporated as if fully set forth herein.

14. Beginning in or around October 2021, and continuing through in or around August 2024, in the State and Federal District of Nevada and elsewhere,

**PAULINO GONZALEZ,**

defendant herein, along with individuals associated with Company 1, Company 2, and Company 3, and others known and unknown to the United States, knowingly and willfully agreed and conspired with each other and others to: to defraud the United States by

cheating the United States government or any of its departments and agencies out of money and property, and by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of HHS and CMS in its administration and oversight of Medicare; soliciting and receiving illegal kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1); and offering and paying illegal kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2).

### Purpose of the Conspiracy

15.     It was the purpose of the conspiracy for GONZALEZ and others, known and unknown to the United States, to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for items and services that were (i) medically unreasonable and unnecessary, (ii) ineligible for Medicare reimbursement, and/or (iii) procured through illegal kickbacks and bribes; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of GONZALEZ and his co-conspirators, and to further the fraud.

### Manner and Means

16.     The manner and means by which PAULINO GONZALEZ and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

17.     From approximately October 2021 through approximately August 2024, PAULINO GONZALEZ, as an independent contractor with Company 1, agreed with others to order and apply amniotic allografts that were medically unreasonable and unnecessary, ineligible for Medicare reimbursement, and/or procured through illegal

1  kickbacks and bribes.

2      18.    From approximately October 2021 through approximately August 2024, Company 1 fraudulently billed Medicare approximately $94,695,744 for amniotic allografts purchased from Company 2 and Company 3, and applied by PAULINO GONZALEZ and others, that were medically unreasonable and unnecessary, ineligible for Medicare reimbursement, and/or procured through illegal kickbacks and bribes. Medicare paid Company 1 approximately $54,192,540 based on those false and fraudulent claims.

    19.    Company 1 paid PAULINO GONZALEZ approximately $265,029 in exchange for applying the amniotic allografts billed to Medicare. Company 2 paid PAULINO GONZALEZ approximately $7,391,584 in exchange for arranging for and recommending the purchasing and ordering of the allografts billed to Medicare.

### Overt Acts

    20.    In furtherance of the conspiracy, and to effect the objects of the conspiracy, defendant PAULINO GONZALEZ, along with individuals associated with Company 1, Company 2, and Company 3, and others known and unknown to the United States, committed or caused to be committed various overt acts in the District of Nevada and elsewhere, including but not limited to the following:

    a.  On or about December 13, 2021, PAULINO GONZALEZ received an illegal kickback and bribe in the form of a check in the amount of $2,919.60 that was drawn on Company 2's bank account ending in 7838, which he deposited into a bank account ending in 5798 in the name of The PG3 Solutions Living Trust.

    b.  On or about November 7, 2022, PAULINO GONZALEZ received an illegal kickback and bribe in the form of a check in the amount of $199,291.95 that

was drawn on Company 2's bank account ending in 7838, which he deposited into a bank account ending in 5798 in the name of The PG3 Solutions Living Trust.

   c. On or about July 12, 2023, PAULINO GONZALEZ received an illegal kickback and bribe in the form of a wire transfer in the amount of $541,505.25 that was drawn on Company 2's bank account ending in 0899, which he deposited into a bank account ending in 5798 in the name of The PG3 Solutions Living Trust.

   d. On or about January 9, 2024, PAULINO GONZALEZ received an illegal kickback and bribe in the form of a wire transfer in the amount of $497,724.79 that was drawn on Company 2's bank account ending in 0899, which he deposited into a bank account ending in 5798 in the name of The PG3 Solutions Living Trust.

## FORFEITURE ALLEGATION
*Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks*

21. The allegations contained in Count One of this Criminal Information are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture under 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(7).

22. Upon conviction of the felony offense charged in Count One of this Criminal Information,

**PAULINO GONZALEZ,**

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 42 U.S.C. § 1320a-7b(b)(1) and (b)(2), a specified unlawful activity as defined in 18 U.S.C. §

1956(c)(7)(F), involving a Federal health care offense as defined in 18 U.S.C. § 24, or 18 U.S.C. § 371, conspiracy to commit such offense:

  defendant herein, shall forfeit to the United States of America, property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b)(1) and (b)(2), involving a Federal health care offense as defined in 18 U.S.C. § 24:

  a. any and all property with the requisite nexus to violations of 18 U.S.C. §§ 371 under the forfeiture statutes, 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(7), and Fed. R. Crim. P. 32.2(b)(2)(C); and

  b. an in personam criminal forfeiture money judgment including, but not limited to, at least an amount to be calculated under the forfeiture statutes, 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(7), and Fed. R. Crim. P. 32.2(b)(2)(C)

(all of which constitutes property).

23. If any property subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(7), as a result of any act or omission of the defendant -

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, under 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant for the property listed above.

All under 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(7); 18 U.S.C. § 371; 21 U.S.C. § 853(p); and 42 U.S.C. § 1320a-7b(b)(1) and (b)(2).

**DATED:** this 17th day of June, 2025.

SIGAL CHATTAH
United States Attorney

JESSICA OLIVA
Assistant United States Attorney

MONICA COOPER
Trial Attorney
U.S. Department of Justice