GREGORY A. BROWER, ESQ.
Nevada Bar No. 5232
gbrower@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: 702.382.2101
Facsimile: 702.382.8135

MIRANDA KANE *(pro hac vice)*
California Bar No. 150630
mkane@conmetkane.com
JORDAN DICKSON *(pro hac vice)*
California Bar No. 324406
jdickson@conmetkane.com
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, California 94111
Telephone: 415.343.7100
Facsimile: 415.343.7101

Attorneys for PAULINO GONZALEZ

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>PAULINO GONZALEZ,<br><br>　　　Defendant. | CASE NO. 2:25-cr-00179-RFB-BNW<br><br>**REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO WITHDRAW GUILTY PLEA AND SET ASIDE WAIVER OF INDICTMENT; OPPOSITION TO SEALING REQUEST** |

## I.   INTRODUCTION

Inflammatory rhetoric aside, the government's response misses the point.  The government attempts to divert the Court's attention from the narrow issue before it: Does Mr. Gonzalez's prior counsel's failure to accurately describe the required proof of the intent element of conspiracy provide a fair and just reason to grant Mr. Gonzalez's request to withdraw that plea?  Tellingly, the government's response offers scant legal argument, declines to acknowledge the liberal standard the Ninth Circuit instructs courts to apply to pre-sentence motions to withdraw, completely ignores prior counsel's concession that his advice to Mr. Gonzalez "was not a precise statement of the law," *see* Gov. Resp., Ex. 1 at ¶ 14, and curiously relies on a specious explanation by prior counsel about how deliberate ignorance would apply in this case.  The government devotes the bulk of its pages to everything that this motion is not about.  The Court need not determine whether Mr. Gonzalez's prior counsel is experienced, whether he negotiated a favorable or unfavorable plea deal, or whether he understood the elements of criminal conspiracy, including the intent requirement.  Similarly, neither the government's assessment nor prior counsel's assessment of the strength of the government's evidence is relevant to the issue before the Court. Nor is it relevant that the elements of the offense were listed in the plea agreement or relayed verbally during the plea hearing.

The only issue before the Court is whether a reasonable person relying on prior counsel's incorrect legal advice could have plausibly decided not to plead guilty.  The Court need not get mired in attempting to resolve markedly different factual accounts offered by Mr. Gonzalez and prior counsel to conclude that it is plausible that a person in Mr. Gonzalez's position could have rejected the plea offer had he been properly advised.  Beneath the government's argumentative obfuscation of the real issue before the Court, there is no denying that at the precise moment when Mr. Gonzalez was struggling to understand the intent element, Mr. Gonzalez's prior counsel inaccurately described what the government would be required to prove, resulting in a taint that cannot be cured absent the withdrawal of his guilty plea.  The government's insistent characterization of this motion as "buyer's remorse" highlights the absurdity of its own theory. As Mr. Gonzalez has already conceded, "winning" this motion will undoubtedly place him in a more precarious position than he would be in had he persisted in his guilty plea.  The Court's role is not to save

CASE NO. 2:25-cr-00179-RFB-BNW                              REPLY TO OPP. TO MOT. TO WITHDRAW

Mr. Gonzalez from this result. Its role is to determine whether there is a fair and just reason to permit withdrawal of his guilty plea. There is.

## II.  ARGUMENT

Four aspects of the government's response warrant a reply. First, the government's response does not acknowledge that prior counsel admitted his advice to Mr. Gonzalez was incorrect. That admission, coupled with Mr. Gonzalez's reliance on it, makes it plausible that a reasonable person similarly situated could have rejected the plea offer had he been properly advised. Second, the government inexplicably endorses prior counsel's faulty explanation of the concept of deliberate ignorance and its application to the elements of conspiracy. The imprecise explanation of deliberate ignorance in prior counsel's sworn declaration raises serious questions about counsel's broader advice to Mr. Gonzalez and underscores the significance of the incorrect advice that is the gravamen of his motion to withdraw. Third, the impact of prior counsel's wrong advice and his failure to seek and secure additional discovery is elucidated by his incorrect understanding of the operative facts underlying the government's allegations. Fourth, the government's "buyer's remorse" theory is belied by the commonsense reality of the consequences of Mr. Gonzalez's decision to seek to withdraw his plea.

### A.  Prior counsel admitted his advice was wrong.

As the Court knows, Mr. Gonzalez recorded a meeting with his prior counsel before entering his guilty plea. During the meeting, counsel minimized what the government was required to prove related to Mr. Gonzalez's intent, explaining:

> You know, when it comes down to this. The easiest thing for them to prove is, I mean, and that's the thing—they don't have to prove that you're a bad person here, you're not. I don't even think [Sales Representative 1 is] a bad person. I mean I think you guys helped a lot of people, okay? **The problem with the kickbacks is, is just receiving it. That is—and whether you thought it was a kickback or not—there's no getting around that. <u>All they have to do is prove the money went into your account. And that's it.</u>**

Motion to Withdraw ("Mot."), Ex. F at 2–3 (1:33–2:02). Counsel went on to say,

> Um, I think, like I said, the easiest thing for them is the kickbacks. **And even your intent, even if you never thought it was a kickback. That's the frustrating thing** . . . Anyway, but it, you know, they don't have to prove you're a bad person, is what it comes down to.

*Id.* at 5–6 (6:02–6:50).  Prior counsel admits what the recording makes undeniable—the first remark was "not a precise statement of the law: the government cannot obtain a conviction merely by proving that money entered a defendant's bank account, because it must also prove that the defendant received the money knowingly and willfully. Read in isolation, that sentence was incomplete."  Gov. Resp., Ex. 1 at ¶ 14.

Oddly, the government is unwilling to acknowledge what prior counsel concedes. Instead, the government curiously questions whether prior counsel even gave the advice he was recorded giving.  *See* Gov. Resp. at 21 ("Had prior counsel *truly* advised Gonzalez that he was strictly liable for receiving kickback payments, as Gonzalez now alleges . . . .") (emphasis added).  There is no dispute that prior counsel incorrectly equated the criminal conduct alleged to a strict liability offense.  Even if prior counsel had earlier given different advice, the recording speaks for itself—as prior counsel admitted, his recorded statement was incorrect legal advice.  It is irrelevant that prior counsel intended this statement to be "shorthand for the deliberate ignorance principle."  Gov. Resp., Ex. 1 at ¶ 14.  Mr. Gonzalez cannot be expected to have read prior counsel's mind and ascertained that prior counsel did not intend for his words to mean what the words literally mean.  At bottom, what matters is whether the advice was wrong and what impact it could have plausibly had on a reasonable person.  Even if the recording were not enough, prior counsel's concession that this statement was "not a precise statement of the law," is more than sufficient to establish that he provided erroneous legal advice.

Given that concession, all that remains for the Court to decide is if proper advice "could have at least plausibly motivated a reasonable person in [Mr. Gonzalez's] position not to have pled guilty." *United States v. McTiernan*, 546 F.3d 1160, 1168 (9th Cir. 2008).[1]  It is certainly plausible that a reasonable person could have decided to reject the plea offer had he been properly advised about the kind of proof required to establish criminal intent in this context.  As laid out in his motion, Mr. Gonzalez repeatedly

---

[1] The government's response repeatedly misstates the correct legal standard the Court must utilize when assessing whether to grant Mr. Gonzalez's motion.  *See, e.g.*, Gov. Resp. at 23 ("Gonzalez cannot credibly claim that he would not have pleaded guilty had prior counsel been able to obtain more pre-indictment discovery.").  The test is not, as the government states, whether **Mr. Gonzalez would have** proceeded differently with adequate advice dond representation. The test is merely whether **a reasonable person could have at least plausibly** not gone forward with the plea agreement had he received adequate representation.  *See McTiernan*, 546 F.3d at 1168.

asked his prior counsel about the government's contention that it could prove his intent to commit any crime. *See generally* Mot., Ex. B. A reasonable person who repeatedly showed hesitance about having the requisite criminal intent, and whose counsel correctly advised him about what the government would have to prove to meet its burden with respect to intent, could have plausibly rejected the government's plea offer and asserted his right to trial. Nothing more is required for the Court to find that there is a "fair and just" reason to grant Mr. Gonzalez's motion, particularly since the Ninth Circuit is unequivocal that the "fair and just reason" standard is "generous and must be applied liberally," *see McTiernan*, 546 F.3d at 1167, and that courts are required to "freely allow withdrawal anytime the defendant provides any . . . reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Hernandez*, 105 F.4th 1234, 1238 (9th Cir. 2024) (citation modified). Prior counsel's erroneous legal advice provides that reason.

**B.** **The government's reliance on counsel's "deliberate ignorance" explanations is misplaced.**

In its effort to minimize the impact of prior counsel's undeniably inaccurate advice, the government relies heavily on prior counsel's recollection of his non-recorded discussions with Mr. Gonzalez regarding intent. Throughout his declaration, prior counsel gratuitously acts as an additional member of the prosecution team by revealing that he explained to Mr. Gonzalez the doctrine of deliberate ignorance and its application to the elements of conspiracy, the crime to which Mr. Gonzalez pled guilty, and other crimes that were being considered by the government. *See generally* Gov. Resp., Ex. 1 at ¶¶ 3–14. The government asserts that prior counsel's mistaken advice in the recorded conversation was not erroneous or inaccurate when considered in context with the separate advice about the concept of deliberate ignorance that prior counsel allegedly provided to Mr. Gonzalez. *See* Gov. Resp. at 19–21. The government's endorsement of the deficient explanations of deliberate ignorance by prior counsel is misplaced and cannot cure the taint of the incorrect advice for two reasons.

First, it is irrelevant whether prior counsel accurately described the doctrine of deliberate ignorance and its relevance to the knowledge element of conspiracy to defraud the United States and pay and receive healthcare kickbacks. Even assuming that such earlier conversations about deliberate ignorance occurred, it does not change the fact that at the precise moment when Mr. Gonzalez was deliberating over the

4

question of the government's proof of intent, prior counsel provided inaccurate legal guidance. Nor does it change the fact that it is plausible that a reasonable person could have rejected the plea offer had they been advised correctly. Tellingly, the government cites no case law that holds earlier correct legal advice cures the taint of later incorrect legal advice in the context of a pre-sentence motion to withdraw a guilty plea.

Second, even if counsel's earlier conversations with Mr. Gonzalez about deliberate ignorance were relevant to the issue before the Court, his description of those conversations—and his inconsistent and contradictory explanations of the doctrine itself—raises new concerns regarding his legal advice. In his declaration, prior counsel seems to suggest that he told Mr. Gonzalez deliberate ignorance could substitute for proof of both knowledge and willfulness. *See, e.g.*, Gov. Resp., Ex. 1 at ¶ 12 ("I discussed deliberate ignorance as it relates to intent and willfulness with Mr. Gonzalez on numerous occasions, both before and after that meeting [referring to the recorded conversation]."). He also conflates deliberate ignorance and willfulness. *See, e.g.*, Gov. Resp., Ex. 1 at ¶ 13 ("It reflects his deliberate ignorance: he ignored the warning signs and exercised poor judgment, and he recognized that what he had done was wrong[.]"). If prior counsel told Mr. Gonzalez that deliberate ignorance could be a substitute for proof of intent or willfulness, as his declaration at times suggests, prior counsel once again improperly advised Mr. Gonzalez about the law. *See United States v. Heredia*, 483 F.3d 913, 931 (9th Cir. 2007) (Graber, J. dissenting) ("Similarly, if not even more obviously, willful blindness is at least one step removed from intention"); *see also United States v. Reyes*, 302 F.3d 48, 54 (2d Cir. 2002) ("In conformity with this view our precedents establish that the doctrine [of deliberate ignorance or willful blindness] may be invoked to prove defendant had knowledge of the unlawful conspiracy. But we do not permit the doctrine to be used to prove intent to participate in a conspiracy. The reason for this distinction is that common sense teaches it is logically impossible to intend and agree to join a conspiracy if a defendant does not know of its existence.").[2] At a minimum, the inexactness of the deliberate ignorance conversations prior counsel

---

[2] Notably, the Ninth Circuit has never ruled that deliberate ignorance is a proper instruction to give when the government alleges a conspiracy to defraud the United States, as opposed to a conspiracy to commit a substantive offense, in violation of section 371. A conspiracy to defraud requires additional proof compared to a conspiracy to commit a substantive offense—namely that there was an agreement to carry out the fraud by deceitful or dishonest means. *See* Ninth Circuit Model Criminal Jury Instructions (continued on next page)

CASE NO. 2:25-cr-00179-RFB-BNW                    REPLY TO OPP. TO MOT. TO WITHDRAW

allegedly had with Mr. Gonzalez should raise serious doubt that counsel correctly explained the doctrine's applicability to Mr. Gonzalez in the first place or that those muddled conversations provided sufficient context for Mr. Gonzalez when counsel later made a legally incorrect statement to him about the government's burden relative to intent.[3]

Mr. Gonzalez should not be expected to have parsed through prior counsel's explanations and hypothetical examples to understand how a deliberate ignorance theory fits into the broader panoply of the requisite proof of criminal intent in this case. He properly relied on his attorney for that. What is strikingly absent from the recorded conversation is any mention of the term "deliberate ignorance" or any explanation of how proof of willfulness and deliberate ignorance are distinct. Still, the government and prior counsel both insist that Mr. Gonzalez should have known that prior counsel's recorded statement "was shorthand for the deliberate ignorance principle[.]" *See* Gov. Resp. at 20 (citing Gov. Resp., Ex. 1 at ¶ 14). It is absurd to suggest that anyone, let alone a non-lawyer, should have been able to thread that logical needle. Counsel's earlier explanations of deliberate ignorance, even if they were on point, do not change the inaccurate advice he gave in the recorded conversation. Nor do they alter the conclusion that it is plausible that a reasonable person could have rejected the government's plea offer if he had been properly advised.

---

11.2. Because such a conspiracy requires proof of a knowing agreement to carry out the fraud by a particular means, proof of deliberate ignorance in lieu of knowledge is suspect at best. *See United States v. Conti*, 804 F.3d 977, 980 (9th Cir. 2015) (citing *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993), *overruled on other grounds*). Prior counsel makes no claim in his declaration that he addressed this nuance between the two forms of conspiracy—both of which are included in the plea agreement— or the lack of firm precedent related to a deliberate ignorance instruction in a conspiracy to defraud case in his "numerous" discussions with Mr. Gonzalez regarding the applicability of the doctrine.

[3] The hypothetical examples prior counsel claims he shared with Mr. Gonzalez highlight the imprecision with which the doctrine was explained to him. Counsel claims he explained deliberate ignorance to Mr. Gonzalez by giving the hypothetical that a buyer could not credibly claim not to know a car worth $1 million was stolen if the seller offered the car to the buyer for $10,000. Gov. Resp., Ex. 1 at ¶ 6. Prior counsel also claims he told Mr. Gonzalez that "a jury would be told that it could find knowledge" if a person was paid $1,000 to drive a car a short distance over the U.S. – Mexico border. *Id.* The problem in both examples is the glaring absence of willfulness, or any *mens rea* apart from knowledge, which is a distinct element in Mr. Gonzalez's case. In a conspiracy case (or in a case alleging violations of the Anti-Kickback statute), proof of more than just knowledge is required. *See* Ninth Circuit Model Criminal Jury Instructions 11.1, 11.2, 24.25. Prior counsel admits that his recorded advice to Mr. Gonzalez did not include this critical distinction. *See supra*, section II-A.

6

### C.    Counsel's Lack of Understanding of the Pertinent Facts Reveals the Import of his Failure to Seek Further Discovery.

Independent of his erroneous legal advice, prior counsel also failed to seek meaningful discovery from the government prior to April 2025 when prior counsel advised Mr. Gonzalez that it would be in his interest to plead guilty. *See* Mot. at 13–16. Despite the absence of any documentary corroboration in the emails produced by prior counsel, the government gamely accepts his self-serving claim that he did, in fact, request discovery from the assigned prosecutor "[a]t the outset." *See* Gov. Resp. at 22–23 (citing Gov. Resp., Ex. 1 at ¶ 16); Gov. Resp., Ex. 4. Regardless of the veracity of counsel's claim, the government's response, once again, misses the point. It is undisputed that after Mr. Gonzalez pled guilty, the government showed and/or provided Mr. Gonzalez with more discovery than it had prior to his guilty plea. Some of this evidence was new to Mr. Gonzalez, particularly statements from witnesses. Mot., Kane Decl. ¶¶ 5, 8. The excerpts from witness interviews that were shared with undersigned counsel and Mr. Gonzalez revealed the absence of any direct evidence that Mr. Gonzalez was independently responsible for medical decision-making regarding the use of allografts. *Id*. It is plausible that a reasonable person could have decided not to plead guilty if his counsel had asked for, reviewed, and assessed the quality and credibility of potential witness testimony prior to advising his client to accept a plea offer. Neither prior counsel nor the government's view of the strength of its evidence bears on whether a reasonable person could have plausibly decided to exercise their constitutional right to hold the government to its burden of proof had their counsel insisted upon receiving meaningful pre-plea discovery.

The imprudence of prior counsel's decision to advise Mr. Gonzalez to plead guilty before receiving additional discovery is underscored by counsel's lack of familiarity with the facts underlying the government's theory of criminality. On several occasions in his declaration, counsel makes the erroneous claim that the government's theory is that Mr. Gonzalez received approximately $7 million in exchange for his work as a Licensed Practical Nurse ("LPN"). *See, e.g.*, Gov. Resp., Ex. 1 at ¶ 4 ("while receiving sums grossly disproportionate to what a licensed practical nurse (LPN) earns for comparable services—ultimately totaling approximately $7,391,584"); ¶ 5 ("a defendant who deliberately avoids confirming an obvious truth—here, that payments of this magnitude and structure were not legitimate compensation for an LPN's services—may be found to have acted knowingly."); ¶ 6 ("I explained that Mr. Gonzalez's

7

receipt of approximately $7,391,584 as an LPN applying allografts presented the same problem: the circumstances were such that he should have known—or deliberately avoided knowing—that the arrangement was not legitimate."); ¶ 7 ("by his receiving more than $7 million in kickbacks from Company 2 for his work as an LPN"). Prior counsel's explanation of the "quid pro quo" allegation is wrong. According to Mr. Gonzalez's plea agreement, "Company 2 paid Defendant approximately $7,391,584 in exchange for arranging for and recommending the purchasing and ordering of the allografts billed to Medicare." ECF No. 7 at ¶ 12-l. The government did not allege—and Mr. Gonzalez did not plead to—receiving more than $7 million for his work as an LPN.

Such a fundamental misconception regarding the government's theory (and the plain language of the plea agreement) underscores the impact that prior counsel's failure to seek additional discovery had on Mr. Gonzalez and his ability to understand the scope of the evidence against him before pleading guilty. It strains credulity to claim that Mr. Gonzalez had the benefit of reasonable advice about the evidence against him when prior counsel's Declaration also describes the evidence against Mr. Gonzalez inaccurately.

**D.      The Government's "Buyer's Remorse" Motive is Unpersuasive.**

The government dismisses Mr. Gonzalez's motion to withdraw his guilty plea as "buyer's remorse." Gov. Resp. at 3. Such a claim is belied by common sense. Just by bringing this motion, Mr. Gonzalez has likely lost the ability to cooperate with the government and any corresponding sentencing leniency that could come with doing so. Likewise, he could potentially lose credit for acceptance of responsibility at any future sentencing hearing. Moreover, if the Court grants Mr. Gonzalez's motion, a "win" means that the government is no longer bound by the terms of the plea agreement. Mr. Gonzalez understands that his "reward" will almost certainly be a superseding indictment with additional federal felonies which may carry more serious penalties.[4] *See Hernandez*, 105 F.4th at 1240 (the fact that a

---

[4] The gratuitous inclusion of Mr. Gonzalez – thinly anonymized as LPN-1 – in the recent indictment against Stephen Dubin that was ostensibly presented to the grand jury while this motion was pending, removes any doubt that the government will pile on additional charges if Mr. Gonzalez prevails in this motion. *See United States v. Stephen Dubin*, 26-CR-0166 (returned August 4, 2026). The Dubin indictment functions as both a warning and a diversion—making the consequences of "succeeding" on this motion all the more obvious.

CASE NO. 2:25-cr-00179-RFB-BNW                          REPLY TO OPP. TO MOT. TO WITHDRAW

defendant's "plea withdrawal request would have likely led to a *more severe* sentence, undercut[s] the inference that he is trying to game the system to avoid a harsh punishment.").

It is equally irrational to argue, as the government does, that Mr. Gonzalez seeks to withdraw his plea because he will be in a better position with respect to his employment prospects if he prevails. He will not. Such a claim rests on the speculative (and incorrect) premise that being under federal indictment for healthcare fraud offenses, rather than being convicted of such an offense, will ameliorate Mr. Gonzalez's employment issues. Both sides have accurately noted that Mr. Gonzalez lost his job almost immediately after his name was publicized as part of a nationwide health care takedown in July 2025. He has since voluntarily given up his nursing license and does not expect to obtain his medical license. It is highly unlikely that Mr. Gonzalez will be able to reverse those consequences by prevailing in this motion. Mr. Gonzalez's motion to withdraw his plea is made in good faith. The myriad negative consequences that will inevitably flow from Mr. Gonzalez's decision to pursue this motion should assure the Court that Mr. Gonzalez truly relied upon his prior counsel's inaccurate legal advice when he pled guilty.

### E.    Objection to Sealing

The government seeks to file its response under seal citing the need to conceal the fact of Mr. Gonzalez's cooperation. ECF Nos. 43, 44. Mr. Gonzalez objects. His motion, which also reveals the fact of his cooperation, is already available on the public docket. ECF No. 29. "There is a First Amendment right of access to criminal proceedings and documents therein . . . There is also a common law right to inspect and copy public records and documents, including judicial records and documents." *United States v. Doe*, 870 F.3d 991, 996–97 (9th Cir. 2017) (citation modified). The First Amendment right of access can be overcome only by a compelling governmental interest and a form of sealing that is narrowly tailored to serve that interest. *See Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 509–10 (1984). The government's two-page, pro forma sealing motion provides no other compelling interest or a narrowly tailored solution and therefore should be denied. [5]

---

[5] On August 5, 2026, at undersigned counsel's request, the parties met and conferred regarding the government's request to seal. Undersigned counsel confirmed that Mr. Gonzalez had already made the existence of his cooperation agreement public via his original motion to withdraw his guilty plea, and that (continued on next page)

9

CASE NO. 2:25-cr-00179-RFB-BNW                                          REPLY TO OPP. TO MOT. TO WITHDRAW

### III.    CONCLUSION

Mr. Gonzalez asks this Court to resolve a narrow issue—whether it is plausible that a reasonable person could have proceeded differently had he been advised correctly by prior counsel.  Under the Ninth Circuit's broad and liberal standard for resolving this issue pre-sentencing, such a result is certainly plausible.  Mr. Gonzalez respectfully requests that the Court grant his motion and allow him to withdraw his guilty plea.

DATED: August 7, 2026                    Respectfully submitted,

                                         CONRAD | METLITZKY | KANE LLP


                                         */s/ Miranda Kane*_____
                                         MIRANDA KANE
                                         JORDAN DICKSON
                                         Attorneys for Paulino Gonzalez

---

the existence of his cooperation was not an adequate basis to request sealing as a result.  Government counsel suggested that they may be willing to amend or more narrowly tailor their request to seal but did not commit to doing so.

10